# LYON *v.* ALLEY.

## APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 149. Argued January 7, 8, 1889.—Decided April 1, 1889.

Under the laws in force in the District of Columbia, when the cause of action in this case arose, the failure of the commissioner of improvements to deposit .with the register a statement exhibiting the cost of. setting the curbstone and paving the footway in front of each lot or part of lot, separately, and the amount of tax to be paid by each proprietor, the failure of the register to place without delay in the hands of the collector a list of the persons taxed and the failure of the collector to give the required notice to such persons, rendered invalid a

tax sale under those laws and certificates thereof, as against an innocent purchaser.

The provisions in those laws respecting the deposit of such statement with the register, the placing the list in the hands of the collector, and the notice to the owners were intended as a condition precedent, a strict compliance with which was necessary in order to make the tax a lien upon the lots.

An erasure and interlineation in an assessment roll in the District of Columbia, made nearly twelve months after it was completed and deposited in the register's office, and after lots not assessed had passed into the ownership of a *bona fide* purchaser, is neither a reassessment nor an amendment of the original assessment. Although the illegality of a tax sale is patent on the face of the proceedings, if the property was acquired by a *bona fide* purchaser before the sale and without notice of the tax, a court of equity has jurisdiction to remove the cloud upon the title.

The case, as stated by the court in its opinion, was as follows:

This is a suit in equity, brought by the appellee in the Supreme Court of the District of Columbia, to remove clouds from, and to quiet the title to, certain real estate in the city of Washington. The property is described as lots 1 to 12, inclusive, square 156, fronting on the north side of P Street north, between 17th and 18th Streets west, in that city, and was at one time owned in fee simple by the plaintiff, John B. Alley, who subdivided the lots and sold portions thereof to certain persons named, to whom he gave bonds of indemnity as a security against the claim of the defendant, Isaac S. Lyon. Alley and his grantees are in actual possession of the property, and this suit is brought, therefore, for the benefit of all of them. The claim of the defendant is derived from certain certificates of tax sale issued to him by the District of Columbia, October 15, 1881, the tax being a special improvement tax for setting the curbstones and paving the footways and gutters along the front line of the property.

The bill, after alleging these facts, sets out the various steps and processes by which the claim of the defendant originated, which is alleged to be invalid and illegal, and charges that the said certificates were issued without authority of law and

are not any evidence of title to, or lien upon the said lots. The relief asked for is a decree declaring the tax sale void, and an injunction against Lyon from setting up any right, title or claim by virtue of the certificates issued to him on his purchase.

The defendant answered denying the validity of the title of the plaintiff and his grantees, and also filed a cross-bill setting out in detail the proceedings by which his own claim originated; alleging that such claim was valid and legal, and superior in law and in equity to that of the plaintiff and his grantees; and praying that his certificates might be decreed a lien upon the lots. Upon an agreed statement of facts, the court at special term rendered a decree in accordance with the prayer of the cross-bill. Upon appeal to the court in general term that decree was reversed, and a decree made in accordance with the prayer of the original bill; and an appeal from the latter decree brings the case here.

The material facts as gathered from the record, are substantially as follows: On the 2d of November, 1869, the then corporation of the city of Washington passed the following act:

"Be it enacted, . . . That the mayor be, and he is hereby, authorized and required to cause the curbstones to be set and the footways and gutters paved on the north side of P Street north, between Sixteenth Street west and Rock Creek, the work to be contracted for and executed in the manner and under the superintendence provided by law, and to defray the expenses of said improvements a special tax, equal to the cost thereof, is hereby imposed and levied on all lots or parts of lots bordering on the line of the improvement; the said tax to be assessed and collected in conformity with the provisions of the act approved October 12, 1865." Acts 67th Council, c. 236, p. 116.

The act of October 12, 1865, referred to, extended prior acts of May 23 and 24, 1853, to special improvements thereafter made, and provided that the cost and expense of every local improvement thereafter made, "unless otherwise provided for in the act or acts ordering the same, shall be levied, assessed, collected and paid, and the payment thereof enforced," as provided in those acts. Webb's Digest, 360–2.

The act of May 23, 1853, (Webb's Digest, 155,) provided for proposals for setting curbstones, etc., petition for the improvement and plan of the property, time within which the improvement is to be made, and by its 5th section required the appointment of two assistant commissioners.     Its 6th section reads as follows:

"So soon as the setting and paving of any such curbstone and footway shall have been completed by the commissioner of improvements, he shall deposit with the register a statement, exhibiting the cost of setting the curbstone and paving the footway in front of each lot or part of lot, separately, and the amount of tax to be paid by each proprietor of said lots or parts of lots, and the register shall then, without delay, place in the hands of the collector of taxes a list of the persons chargeable with such tax, together with the amount due by each person; and the collector shall, within ten days after receiving such list, give notice in writing to each proprietor, if residents of this city; if non-residents, then to their tenants or agents, if known, stating the amount of tax by them respectively due, and requiring that the same be paid within thirty days from the date of such notice; and if any of the taxes so due shall remain unpaid for more than thirty days after the date of such notice, then the said collector shall proceed to collect the same, together with interest in addition thereto at the rate of ten per centum per annum, to be computed from the date of the commissioner's return to the register, in the same manner as other taxes upon real property are by law collected; and the collector shall deposit the same in bank to the credit of the ward entitled thereto, first deducting the commissions prescribed for collecting the same."

The 8th section provided that such work shall be paid for by certificates of stock, commonly known as "paving stock," issued by the mayor and given to the contractor, and redeemable from time to time as the taxes were collected.

None of the provisions of the act of May 24, 1853, are important in connection with this case.

The act of June 10, 1867, (Webb's Digest, 467,) created an officer known as superintendent and inspector of improvements,

whose duty it was to prepare plats and fix grades, and to super-intend the paving of footways, etc., and provided that, with two assistant commissioners to be appointed by the mayor from among those along or near the line of any proposed improve-ment, he should have the exclusive control of such improve-ment; further, that the superintendent and inspector should "be charged with the duty of making all assessments on lots bordering on any street, alley, or avenue which shall have been paved," etc. The last act on the subject, that of October 28, 1867, (65th Council, c. 6,) provided that all taxes for paving, etc., should be payable in four instalments, one-fourth within thirty days after the service of the notice by the collector of taxes, and the remaining three-fourths in three equal annual pay-ments, for which certificates of indebtedness bearing interest at the rate of ten per centum per annum, and chargeable against the property involved, should be issued by the mayor to the contractor.

The lots in question are situated in what was formerly the 1st ward of the city of Washington, along the line of street the pavement of which was provided for by the act of Novem-ber 2, 1869, *supra*, and were at that time owned by one Thomas Young.

On the 1st of April, 1870, the corporation of Washington contracted with one Henry Birch to set the curbstones and pave the footways and gutters in the 1st ward of the city; and between that date and November 16, 1870, he performed that part of the work bordering upon the lots in question, and the same was accepted by the corporation. Its cost was $2054.10. At that time William Forsyth was the superinten-dent and inspector of the paving of carriageways and footways of the corporation under the act of June 10, 1867. When the work under Birch's contract was completed Forsyth, as it was his duty to do, entered all of it in the ward book with the proper proportionate charge against each lot, with the exception of that appertaining to the lots in question. As to these no entry was made until November, 1871, when the fol-lowing was interlined in red ink: "Entered November 17, 1870. This work was done at this date, but, by request of

the owner, not entered until Nov. —, 1871. Wm. Forsyth, S'v'yor, D.'C."

On the 13th day of January, 1871, there were issued to Henry Birch fifty-two certificates of paving stock for the four instalments, being for the entire amount on the assessment roll, except as to the twelve lots in question.

Between November, 1870, and November, 1871, to wit, February 21, 1871, the government of the city of Washington was succeeded by that of the District of Columbia, and Forsyth became the surveyor of the District.

The contractor testifies on oath that he had nothing to do with the omission of the lots in question from the assessment roll, and, in fact, knew nothing of such omission; that during the progress of the work the owner of the lots, Thomas Young, promised in person to pay in full for the improvements when finished, provided he, Birch, would deduct ten per cent from the contract price, and that he, Birch, agreed to this arrangement. When the entries relative to the lots were made, in November, 1871, the collector entered the amounts in the "special ledger" in his office as assessed against the lots, and then gave the notice thereof prescribed by law. Certificates of indebtedness against the lots, agreeably to the act of October 28, 1867, were therefor issued to the contractor, who sold and transferred the same to the appellant, Lyon, for value before maturity. After their maturity, and for default in their payment, Lyon procured the collector of taxes of the District of Columbia, in 1881, to sell the lots in question, and bought them in, paying the purchase price by surrendering the certificates of indebtedness aforesaid, and paying the difference in cash. In return, he obtained twelve several certificates of tax sale, one as to each lot, bearing date October 15, 1881.

Prior to the aforesaid entry in red ink, however, and while the records all showed no assessment or claim of any kind against the lots in question, to wit, October 2, 1871, Young sold and conveyed them to Hallett Kilbourn, and by various transfers thereafter, all made subsequent to the red ink entry, they came into the possession and ownership of the plaintiff, January 26, 1881.

In 1875, while the title to the lots was in one James M. Latta, a sale of them was attempted to satisfy the delinquent taxes assessed against them as aforesaid. Latta thereupon filed his bill in equity against the District of Columbia and John F. Cook, collector, to enjoin such sale thereof, and a temporary restraining order was granted on the 29th day of July of that year, which still continues in force. Neither Lyon nor the contractor, Birch, was made a party to that bill; and the collector, upon the service of said restraining order, made no entry or memorandum of the same against the lots in question, but by mistake entered the memorandum thereof as applying to the same numbered lots in square 256.

*Mr. Henry E. Davis* for appellant.

*Mr. H. H. Wells* for appellee.

Mr. Justice Lamar delivered the opinion of the court.

The court below held —

(1) That the act of the common council of November 2, 1869, levying a tax for the paving and curbing of P Street in front of the lots involved in this controversy, created an inchoate lien upon them which would have been complete had the assessment been made by the proper officer in conformity with the law and the ordinances upon the subject;

(2) That inasmuch as the omission of this lot from the assessment roll was not made by mistake, or through ignorance or negligence, but intentionally and at the request of the party then owning the lots, and as Kilbourn, before purchasing the lots, exercised proper diligence in examining the records, and found no claim or lien of any kind existing against them, he should be considered as a *bona fide* purchaser, without notice of the lien imposed by the tax, and therefore as having taken his title free and clear of the tax in question; and,

(3) That as Kilbourn took the lots discharged of any lien imposed by the tax under consideration, any subsequent pur-

chaser from him would acquire the same sort of title — that is, a title not affected by the tax certificates involved in this case. It, therefore, granted Alley's prayer for a removal of the cloud upon his title occasioned by such tax sale.

To the correctness of these rulings the appellant's counsel have raised several objections, which it is necessary to consider. It is contended that the requirements of the statute, which were not complied with, were mandatory only so far that it was necessary they should be substantially observed; and that unless some injustice has been done, or some inequality occasioned, equity will disregard a mere failure to follow the law. This proposition presents the question whether the failure of the commissioner to deposit with the register a statement of the taxes upon the lots, the failure of the register to place without delay in the hands of the collector a list of the persons taxed, and the failure of the collector to give the required notice to such persons, constituted such a non-observance of the requirements of the statute as to render invalid, as against the appellee, the tax sale and the certificates thereof issued to the appellant.

In view of the specific and imperative language of these provisions, and more especially of their nature and obvious purpose, we cannot doubt that they were intended as conditions precedent, a strict compliance with which was necessary in order to make the tax chargeable as a lien upon the lots. This question was directly presented and distinctly settled in the case of *French* v. *Edwards*, 13 Wall. 506, in which the rule was laid down with regard to directory and mandatory provisions of tax laws, which has been since approved by the Federal and state courts.

In that case the defendant asserted a title to the land in dispute under a deed executed by the sheriff of Sacramento County, California, upon a sale on a judgment rendered for unpaid taxes on the property described, and the whole case turned on the validity of this tax deed. It was a case of non-compliance with the requirements of the statute, the main question being whether the departure of the officer from such requirements rendered the sale invalid. The court said:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and despatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

Judge Cooley in his work on taxation refers to this case, and says: "The doctrine therein stated seems a sound and just rule, and may be reasonably believed to be in accord with the legislative will in the cases to which it is applied." Chief Justice Shaw in the earlier case of *Torrey* v. *Millbury*, 21 Pick. 64, lays down the same rule in nearly the same terms.

The rule thus stated applies unquestionably to the case before us, which is a much stronger one in the number and character of the prerequisites to the tax sale which were disregarded. The provisions of statutes as to the form and mode of assessments, as to tax lists, and the place where the tax lists are to be deposited, are, according to the highest authority, designed for the benefit of the taxpayers, and the protection of their property from sacrifice. *Sandwich* v. *Fish*, 2 Gray, 298, 301; Cooley, Taxation, 216, 217, 218. When, therefore, Kilbourn, from whom the appellee derived title, purchased the lots in question, there was, so far as we can learn from the record in this case, nothing in the register's office or in the collector's office, or in the hands of the latter, to put a *bona fide* purchaser upon notice either actual or constructive.

We cannot concur with the counsel for appellant in the proposition that the requirements of the statute were substantially complied with.  The erasure and interlineation in the assessment roll, made nearly twelve months after it was completed and deposited in the register's office, and after the lots not assessed had passed into the ownership of a *bona fide* purchaser, cannot be considered in any sense as a re-assessment, or an amendment of the original assessment.  It was simply an unauthorized and improper alteration, by a person with not even the semblance of authority, of an official document in the assessor's office, where the law required it to be.  Its only effect, if it has any, is to show, in connection with other facts upon the record, that the withholding of the assessment of these lots was not a mere mistake of the officers, but the result of an agreement between the then owner of the lot and the contractor, whereby the former promised to pay, and the latter to accept, 90 per cent of the contract price for the improvements in lieu of the certificates of indebtedness otherwise to be issued by the mayor, and that, in pursuance of this agreement, the assessment of the lots was omitted by the officer at the request of the owner, and those certificates of indebtedness were not issued until more than twelve months after the certificates for the other improvements were issued, and until after the lands had been sold to Kilbourn.  We are of opinion that Kilbourn obtained a title to the lots in question free from the lien of the alleged assessment, and that Alley acquired the same title alike unencumbered.

But it is contended that even if we adopt the conclusion reached by the court below, as to the illegality of the tax sale and the nullity of the certificate issued to the appellee, still the case made by the appellee does not show such a cloud upon his title as calls for relief from a court of equity.  In other words, that when the illegality of a tax sale is patent upon the face of the proceedings, as is the case as to the sale here complained of, the jurisdiction of a court of equity to remove a cloud does not attach.  The case of *Hannewinkle* v. *Georgetown*, 15 Wall. 547, cited by counsel, fails to support the contention that such is the law of this court.  That case was not

a suit to remove a cloud from a title. The complainant filed a bill to enjoin the collection of a tax, alleged to be illegal, and the court decided that there was no remedy in equity to enjoin the collection of a tax, upon the sole ground of its illegality.

It is a well settled doctrine of this court that equity will not interpose to arrest the proceedings for the collection of a tax, upon the sole ground of its illegality. It is equally well settled by the decisions of this court and the state courts, that after the land has been sold, and a conveyance of some sort made to the purchaser, courts of equity have inherent jurisdiction to give relief to the owner against vexatious litigation and threatened injury to the market value of the land, by removing the cloud which such illegal sale, and the illegal claim arising from it, may cast upon the title. And in such case of damage, either existing or apprehended, equity will interpose for relief, even during the progress of the proceedings before the sale.

In the *Union Pacific Railway Co.* v. *Cheyenne*, 113 U. S. 516, 525, this court thus presents the whole law on this point:

"It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subject to vexatious litigation, if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the taxpayer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. Even the cloud cast upon his title by a tax under which such a sale could be made would be a grievance which would entitle him to go into a court of equity for relief."

It may be proper to observe that in the present case the illegality does not appear wholly on the face of the record,

but that it is shown in part by evidence outside, to wit, the fact that the title to the land sought to be charged was acquired by a *bona fide* purchaser without notice. We think, therefore, that the allegations of the bill and the facts proved in this case bring it fully within the equity jurisdiction of the court.

Another ground upon which we are asked to reverse the decision of the court below is, that apart from the tax sale certificates, the act, itself a notice to all purchasers, in terms levied the tax directly upon the lots in question, and thereby a lien attached at once, and, the lien never having been removed, the decree should have required the appellee to pay to the defendant the amount of the tax due before granting the relief prayed for.

It is clear that the act does not in so many words create an express lien, and that the acts of Congress do not expressly confer upon the corporation the authority to create such liens. The statement, therefore, must be taken as true, only in the sense that every municipal tax, in cases of local improvement, paving, etc., involves a lien upon the particular real estate on which it is imposed. The error of the argument of counsel, we think, lies in the assumption that the lien attaches at the date of the passage of the act. The general rule is, that when no time is expressly fixed by the statute for the lien to take effect, it accrues upon the assessment of the tax. Now, the act of the common council imposed and levied a tax to defray the cost of the improvement, but it also declared that the tax should be assessed and collected in conformity with the provisions of certain acts which prescribed in detail, the mode, manner, and time of assessment, and the different steps to be taken preliminary to such assessment and collection. If any lien was created by the terms of the statute, it must have existed and attached according to such terms and conditions as were prescribed by the law creating it.

In the case of *Heine* v. *The Levee Commissioners*, 19 Wall. 655, 659, the court said:

"Nor need we decide whether taxes once lawfully levied are, until paid, a lien on the property against which they are assessed, though it is laid down in the very careful work of

Judge Dillon, that taxes are not liens upon the property against which they are assessed, unless made so by the charter, or unless the corporation is authorized by the legislature to declare them to be liens. But here no taxes have been assessed except those which have been released by the bondholders accepting new bonds for the interest of the year so assessed. And it is too clear for argument that taxes not assessed are no liens, and that the obligation to assess taxes is not a lien on the property on which they ought to be assessed."

From the record before us, we think the decision of the court below, that no lawful assessment of the tax had been made; that no lien upon the lots in question exists; and that the appellant is not entitled to the relief prayed for in his cross-bill, accords fully with the decisions of this court, above referred to.

As the points disposed of are decisive of the case, we deem it unnecessary to discuss the effect of the temporary restraining order upon the validity of the collector's sale. The decree of the Supreme Court is

*Affirmed.*