Mr. Justice James
delivered the opinion of the court:
This is substantially an action to recover from the District *486 the value of certain certificates of indebtedness received by it from the plaintiff as purchaser of certain lots at what proved to be an illegal and void sale thereof for taxes.
The declaration avers that the collector of taxes advertised among other property lots i to 12 in square 156 for sale at public auction on October.5, 1881, for non-payment of certain taxes assessed and in arrears thereon, and on that day sold said lots to plaintiff for $4,082.70, and, upon payment of the purchase money by plaintiff, executed and delivered to him a certificate of tax sale for each one of said lots; that said sale was not made according to law and was void, and that plaintiff has applied to defendant to refund the money so paid on account of said purchase, that defendant has refused so to refund, and has thereby become indebted to plaintiff in the sum stated.
Defendant’s plea, admitting the advertisement and sale, states that the collector received from the plaintiff, in payment for said lots, certain corporation stock which had been issued without authority of law, and transmitted the same to the District auditor, who cancelled it and forwarded it to the Treasurer of the United States; that subsequently it was discovered that the advertisement and sale of said lots for these taxes had been enjoined, and that the collector of taxes had advertised and sold the same through mistake, notwithstanding said injunction, and had, upon discovering such mistake, declared the sale null and void; and that plaintiff purchased with knowledge of said injunction. Issue was joined, and the case was heard upon the following stipulation as to facts:
STIPULATION OF FACTS.
It is hereby stipulated and agreed by and between the respective parties hereto, that the above entitled cause may be tried by the court without a jury, upon the facts contained in the following statement, viz:
1. Henry Birch, the assignor of plaintiff, was a practical paver, and as such he set the curbstones and paved the foot-way and gutter (among other places) in front of lots 1 to 12, *487 inclusive, in square 156 under a valid contract executed in 1870, with the Corporation of Washington.
2. The work was done in a good and workmanlike manner and under the supervision provided by law, and was at its completion duly measured and accepted by the Corporation of Washington through its authorized officers.
3. The work was completed on or about November 17, 1870, and its cost to be paid to the said Birch, amounted to the sum of $2,054.10 — no part of which has ever been collected or paid.
4. Upon the completion of the work, it was the duty of Wm. Forsythe, then superintendent and inspector of paving of footways, etc., under the Act of June 10, 1867, to make all assessments on lots bordering on any street which shall have been paved (section 6), and without delay after the completion of a pavement, to deposit with the Register a statement exhibiting the cost of the work in front of each lot, and the amount of tax to be paid by each lot owner: and the Register in turn was to place in the hands of the Collector of Taxes a list of the persons chargeable with such tax; and he in turn was to give notice in writing to the respective lot owners of the amount of tax due by them. Act of May 23, 1853, section 6,
5. The said Wm. Forsythe neglected to assess the property as required by law, in that he withheld the statement of the cost of the work from the Register, and the assessment from record for twelve months after the completion of the work, or until November, 1871 — this at the sole request and procurement of the owner of the said lots, whereby he, the owner, ivas enabled to sell, and did sell said lots without any record notice of said assessment to the purchaser.
6. Between the time the work was completed and its attempted assessment against said lots, the Corporation of Washington had been succeeded by the Government of the District of Columbia and the offices under the Corporation of Washington had been abolished, and the said Forsythe was without authority to make any assessment against said *488 lots; yet, on or about November, 1871, the records were erased and altered, whereby an assessment against said lots was interpolated over and above the signatures already made, of the Mayor, Ward Commissioner and other officers of the Corporation, presumably to make it appear that they had approved the same, when, as a matter of fact, they had not.
7. On the 9th day of March, 1872, the District of Columbia, notwithstanding this action of Forsythe, issued and delivered to said Henry Birch four certificates of indebtedness against said lots for the cost of said work, signed by the Governor and Register, and said Birch sold and transferred the same to plaintiff for value before maturity — true copies of said certificates are attached hereto.
8. In June, 1874, these said lots were (among others) advertised to be sold by the collector of taxes for non-payment of said assessment or certificates; whereupon, through proper proceedings had, the Supreme Court of the District of Columbia, by its order passed in cause James M. Latta vs. The District of Columbia, John F. Cook, Collector of Taxes, and Theodore Sheclcles, No. 4,450, Fquity, enjoined the defendant from selling said lots through non-payment of said assessment or certificates, which said order has never been set aside, annulled, or reversed, but is still in full force and effect.
9. Neither said Henry Birch nor this plaintiff were made parties to said cause, and neither of them had any knowledge of the order passed therein.
10. The collector of taxes, upon the service of the restraining order issued in said cause, made no entry or memorandum of the same against said lots 1 to 12, in square 156, but by mistake entered the same in his office as applying to the same numbered lots in square 256.
11. On October 5, 1881, the collector of taxes, notwithstanding said injunction, again advertised said lots for sale, and did sell the same for the non-payment of the said assessment or certificates, and plaintiff became the purchaser of each of said lots, and there was then issued to him upon the *489 surrender by him of said certificates of indebtedness (which have been cancelled) and the payment of three dollars in money, the twelve certificates of tax sale, true copies of which are attached hereto.
12. At the time of said sale and purchase, viz: October 5, 1881, this plaintiff had no knowledge whatever of the restraining order passed in said cause No. 4,450, or any of the proceedings therein, and neither he nor his assignor, Birch, were aware of any invalid proceedings connected with said assessment, and said purchase was involuntary on the part of plaintiff and made to protect his interest in said certificates of indebtedness and save the same from sacrifice.
13. The certificates of indebtedness thus surrendered by this plaintiff were computed and accepted as valid by the District of Columbia at said sale, at' and for the sum of $4,079.70, which, with $3.00 paid in cash, made $4,082.70 as the purchase price paid for said lots on October 5, 1881, by this plaintiff.
14. The Supreme Court of the District of Columbia, in February, 1885, by a decree passed in Equity cause John B. Alley vs. Isaac S. Lyon, No. 8,494, set aside this assessment and adjudged that it “did not create or constitute any lien upon the premises,” also that the sale-of said lots by the collector of taxes made on October 5, i88r, was made “contrary to law,” and that the certificates of sale “were illegal and did not give the purchaser of said premises, at said sale, any right, title, estate or interest in law or in equity to the said premises, or any part thereof,” and the present plaintiff was “perpetually restrained and enjoined from using, employing or setting up, or in any way whatsoever, the said assessment lien certificate or certificates of sale as legal and valid, and from claiming any right, title or interest thereunder, or by virtue thereof, to the whole or any part of said lots,” 3 Mackey, 456, which decree was affirmed by the Supreme Court of the United States, 130 U. S., 177.
15. The assessment was illegally levied, and the collector of taxes was without authority and jurisdiction to sell, and said sale was not made according to law, and was void.
*490 16. In 1882, the District of Columbia, upon the application of the then owner of said lots, paid to him the sum of $772.32 for the appropriation by it of the material put there by said Birch under his said contract.
17. Plaintiff first learned of the invalid proceedings connected with said assessment and sale in the early part of 1882, and at once made application to defendant for a return of the certificate of indebtedness and the money accepted by the collector of taxes as the purchase price of said lots (tendering in return the certificates of tax sale), but said application was refused.
18. All Acts of Congress and acts of the late Corporation of Washington having any bearing hereon, are to be considered as in evidence, and may be read at the trial.
19. And should the court be of opinion that plaintiff is legally entitled to recover it may give judgment in his favor for the amount paid by him at the sale, viz, $4,082.70, with interest thereon from the fifth day of October, 1881.
We are authorized, by consent of counsel for both parties, to add, as a part of this stipulation, that the lots in question were sold on Oct. 2, 1871, by the party who owned them when the special improvement was made.
The work done in making the special improvement iff question was done under an ordinance of the city of Washington passed November 2, 1869. That'act provided for levying a special tax on all lots ‘ ‘ bordering on the line of the improvement,” and that the tax should be assessed and collected according to the provisions of the Act of October 12, 1865. This act extended the acts of May 23 and 24, 1853, and provided that the cost and' expenses of every local improvement thereafter made, unless otherwise provided for, should be “levied, assessed, collected and paid, and the payment thereof enforced ” as provided in the said acts of 1853.
Briefly stated, the effect of these acts was to charge the municipality, not with a direct indebtedness for the work done under its ordinance, but with a duty to work out a payment therefor by seeing to it that the cost should be charged *491 as a lien upon adjoining lots, and by enforcing this lien and collecting the special tax from the lot owners. By the operation of certain provisions of the Act of Congress of February 21, 1871, commonly known as the Organic Act, Section 91 and Sections 94-96. Rev. Stát. of District of Columbia, the District became invested with authority, and was charged with the duty, to secure such liens and collect and pay over to the contractor such taxes, in payment for work done under an ordinance of the City of Washington. This power could have been exercised and this duty could have been performed in the present case at any time before the 2d day of October, 1871, when it was cut off by the sale of the lots in question to an innocent purchaser.
Numerous authorities show that where a municipality omits to perform its duty to collect the tax which had been provided as the means of paying for the work done at its request, it becomes chargeable directly with the'indebtedness. See Morgan vs. The City of Dubuque, 28 Iowa, 575; Kearney vs. City of Covington, 1 Metc., Ky., 339; Cummings vs. Mayor, etc., of Brooklyn, 11 Paige, Ch. 596; Fisher vs. City of St. Louis, 44 Mo., 482; Argenti vs. City of San Francisco, 16 Cal., 281; Beard vs. City of Brooklyn, 31 Barb., 142. The principle on which these cases were decided seems to be, not that the municipality is held liable for neglect of duty, but that its liability arises by fair construction of contract. To this liability the District succeeded.
If the resource of payment out of the special tax could have been secured by the District, and was lost by its omission, a duty to pay the contractor would fairly belong to the District, and an issue of certificates of indebtedness to him would not be a void act. All’ such certificates are by law negotiable, and in this particular case they appear to have been assigned for value to an innocent purchaser. Neither he nor the authorities of the District appear to have been informed of the injunction which forbade a sale of the lots, as a means of satisfying them. The plaintiff therefore acted in good faith in making the purchase at the tax sale.
*492 It is insisted, however, on the part of the District, that, in making the sale of the twelve lots to the plaintiff, the collector acted as his agent for the collection of his certificates of indebtedness, and was not acting for the District of Columbia; and that if the agent’s act was invalid, his principal, the plaintiff, must bear the loss. We do not think this proposition is either true or to the point. In collecting taxes— although it be done for the purpose of providing means to pay a particular person — the authorities exercise their own public functions, and cannot be regarded as private agents. In the next place, whatever might be the capacity in which the collector acted, the District received and has retained the proceeds of the transaction. In that respect it treated the sale as made on its account.
The final question, then, is, what is the remedy?
If these certificates were valid they represented, and were received as constituting the value named in the stipulation. As between the parties they were purchase money. The sale gave nothing to the plaintiff, but the District retains, and has disabled itself to return, his certificates of indebtedness. We think it is liable for the amount of these certificates.

The judgment will therefore be for the amount stated in the stipulation, with interest.