**JENKINS et al. v. SMITH, Collector of Internal Revenue.**

**No. 3911.**

District Court, D. Connecticut.

Dec. 1, 1937.

434

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for plaintiffs.

James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen. (Robert P. Butler, U. S. Atty., and Louis Y. Gaberman, Asst. U. S. Atty., both of Hartford, Conn., on the brief), for defendant.

THOMAS, District Judge.

This is a federal income tax refund case involving three issues with reference to income taxes of Leonard A. Jenkins, the plaintiffs' decedent, on the return for 1933. The three questions to be decided are quite unrelated, and the facts and law with respect to each will be stated and discussed separately.

I. The decedent, in 1932, in order to protect his investment in stock of the Merchants National Bank of New Haven, of which he was a director, after a bank examiner had found the capital of the bank impaired, entered into a bond agreement with the other directors and the bank to deposit collateral security with the bank of the value of $436,000, which collateral was to become the property of the bank on April 1, 1933, in the event the bank was declared insolvent. The liability of the decedent under the bond was $30,000. The bank ceased doing business, and its stock became worthless on June 25, 1932, at which time it was taken over by the First National Bank & Trust Company of New Haven.

On April 1, 1933, the First National Bank & Trust Company called upon the decedent and the other directors of the defunct bank to make good their obligation on the bond. The decedent thereupon arranged to borrow from the First National Bank & Trust Company the sum of $30,000, to be secured by other stocks and bonds than those already held by the bank, and to be deposited by him. The decedent then gave his check for $30,000 to the First National Bank & Trust Company in payment of his obligation on the bond. The check was accepted in payment of the obligation, although it overdrew his account by $15,152.39. On the same day, the account was credited with $30,000, and the decedent gave his note for that amount, secured by new collateral, as arranged, to the First National Bank & Trust Company.

The decedent, in his income tax return for 1933, deducted the $30,000 payment as a loss sustained in a transaction entered into for profit. The Commissioner of Internal Revenue disallowed the loss, and assessed additional tax, which constitutes part of the alleged overpayment which the plaintiffs now sue to recover. The additional tax was paid and claim for refund was rejected.

The deduction was proper and plaintiffs must prevail if, under all the circumstances, the obligation on the bond was paid. The defendant urges, however, that there was no payment in fact, but only in form, since the decedent remained obligated to the First National Bank & Trust Company for the same amount, evidenced by a new note. He parted with no cash in 1933, but merely borrowed from his payee in order to pay the same payee.

In my opinion, the obligation on the bond was discharged by the acceptance by the First National of the check as payment. Where or how the decedent obtained the money with which to make the check good is immaterial. The acceptance of the check as payment discharged the obligation, even though it created an overdraft. A new cause of action arose upon the check. The First National could no longer have sued the decedent on the bond. The bank knew of the overdraft, but was satisfied to take its chances on the new obligation. The bond transaction was closed.

The credit to the decedent's account, made on the same day, was the result of a new transaction, initiated by a promissory note to the bank secured by new collateral. It was in no sense an extension of time for payment of the old debt. It was a new contract of a substantially different nature. The consideration of the earlier obligation was the undertakings of the other subscribers to the bond. The consideration of the new obligation was $30,000. The bond did not draw interest; it is assumed that the note to the bank given on April 1, 1933, bore interest, as is usual in the case of a loan by a bank.

The deduction claimed was undoubtedly allowable, and the plaintiffs are entitled to judgment on this issue.

II. The decedent was the son of Newell S. Jenkins, who died in 1919, leaving a will under which the residue of his estate was bequeathed in trust to pay the income thereupon to his wife, Clara E. Jenkins, during her life, and, upon her death, to pay one-third of the corpus to the decedent. The corpus included certain Kolynos Company stock, which the trustees subsequently exchanged for American Home Products Corporation stock. Clara E. Jenkins, the life beneficiary of the trust, died on February 15, 1932, and on that day the stock of the American Home Products Company had a fair market value of $47.375 per share. Thereafter distributors appointed by the probate court filed a report reappraising the estate on the basis of said value of $47.375. This report was accepted and ordered on record by the probate court on July 1, 1932, on which day the stock had a fair market value of $26 per share. The value to be assigned to each share of stock as of December, 1920, when the stock was transferred by the executors of Newell S. Jenkins to the trustees, was $7.649 per share. In 1933, the decedent sold 400 shares for $15,539.64.

The Commissioner of Internal Revenue used the 1920 value as the measure of gain or loss, and computed a realized gain of $12,485.65. The decedent used the February 15, 1932, value as the base, and reported a loss of $3,410.36. The difference between the two figures is $15,896.01, which the defendant contends was properly added to the decedent's income for 1933. Additional taxes were assessed and paid, and claim for refund rejected.

The governing statute, section 113(a) (5) of the Revenue Act of 1932, 26 U.S. C.A. § 113 note, provides that: "If personal property was acquired by specific bequest * * * the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent."

But that section further provides that: "In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

The plaintiffs make their claim under the clause last quoted, contending that the distribution to the decedent occurred February 15, 1932, upon the death of the life tenant.

The first clause is inapplicable, for the decedent did not acquire the property by specific bequest. The second is also inapplicable, for it applies only in case of sale by the estate. It is therefore necessary to consider the interpretation and meaning of the expression "distribution to the taxpayer," in the third clause.

When the executors transferred the shares to the trustees, in 1920, the terms of the bequest were completely carried out, so far as the executors were concerned. There was nothing further that they could do by way of distribution. The term "distribution" in the statute undoubtedly refers to distribution by the executors or administrators. It does not refer to a distribution made by trustees after the property has passed out of the estate of the testate or intestate decedent by whom it was bequeathed. Therefore, it must refer to the transfer made by the executors to the trustees in 1920.

It is well settled that a gift in trust is a gift to the beneficiary of the trust. The trustees derive a bare legal title, with a legal duty attached, and the person that is really enriched is the beneficiary. For this reason, the transfer by the executors to the trustees was in fact a transfer of property of value to the taxpayer.

What really occurred was that two estates or property rights were created in the stocks, one a life estate in Clara E. Jenkins, and the other a vested remainder in Leonard A. Jenkins. This vested remainder was property, although rights of possession and use of the object of the property were deferred.

Upon the death of Clara E. Jenkins, no further property was transferred to Leonard A. Jenkins. A limitation upon his right to possess and use his property ceased to exist. The property which he already had, ripened. Nothing was added to the right which he already had; but, by reason of the lapse of time, what had been a right in futuro became a right in præsenti.

The allotment made by the "distributors" appointed by the probate court was not a distribution, in the sense in which that term is used in the statute, but an ascertainment and determination of the specific property to which his vested remainder had at all times pertained. It was certainly not the intention of Congress to treat the fee as being held in abeyance during the term of the life estate, or to ignore, for income tax purposes, the gain or loss in the value of the estate during that period. The trustees could not, however, be charged with tax on any gain which accrued during that period, for the reason that they made no transfer to the remainderman, upon the death of the life tenant, except the transfer of the bare legal title, and they were not in any way enriched by the gain.

Except for the clause above quoted, designating as the base the value at the time of distribution, the value at the time of the death of Newell Sill Jenkins in 1919 would be the base under the doctrine of Brewster v. Gage, 280 U.S. 327, 50 S. Ct. 115, 74 L.Ed. 457, for the estate in remainder vested at that time. Under the provision of the statute, the 1920 value is the base. The addition of $15,896.01 to the decedent's income for 1933 was correct.

III. The plaintiffs claim that the entire amount of the deficiency paid should be recovered because the collector's notice and demand was not delivered to them within ten days after receiving the assessment list, but about two months later. They base this contention on title 26 U.S.C.A. § 1545, which reads:

"§ 1545. *Notice and demand for tax*

"(a) Delivery. Where it is not otherwise provided, the collector shall in person or by deputy, within ten days after receiving any list of taxes from the Commissioner, give notice to each person liable to pay any taxes stated therein, to be left at his dwelling or usual place of business, or to be sent by mail, stating the amount of such taxes and demanding payment thereof.

"(b) Addition to tax for nonpayment. If such person does not pay the taxes within ten days after the service or the sending by mail of such notice, it shall be the duty of the collector or his deputy to collect the said taxes with a penalty of 5 per centum additional upon the amount of taxes, and interest at the rate of 1 per centum a month."

At this point there are two questions to be considered: First, whether the language requiring notice to be given within ten days after receipt of the assessment by the collector has been modified or superseded; and, secondly, whether this requirement is a condition of valid service of the notice and demand.

The requirement of notice and demand has been abolished in respect of income taxes in all but three situations: (1) Cases in which the whole amount of the tax unpaid becomes due upon default in the payment of any installment; (2) cases in which a deficiency is determined; and (3) cases in which the collector makes a return pursuant to the revised statutes. Paul and Martens, Law of Federal Income Tax, vol. 5, § 42,120.

The instant case falls in the second class. There is a special statute which governs the collection of income tax deficiencies. Section 276(c), Revenue Act of 1932 (26 U.S.C.A. § 276(c) and note). This statute provides that, where a tax has been assessed in time, it may be collected at any time within six years after the date of assessment, by distraint or by a proceeding in court.

A deficiency does not become payable until service of notice and demand. Section 272(b) and (c), Revenue Act of 1932 (26 U.S.C.A. § 272(b, c) and note. Nevertheless, interest is calculated from the dates of the installments due on the return. The service of notice and demand no longer has any significance from the standpoint of starting interest to running on the deficiency. Paul and Martens, Law of Federal Income Taxation, vol. 5, Supp. § 42,-162, citing section 404 of the Revenue Act of 1935 (26 U.S.C.A. § 1693a), and the Conference Committee Report thereon.

Since a deficiency may not be collected without service of notice and demand, it is difficult to see how it may be collected without notice and demand served in time, as required by the statute. Section 272 (b) and (c) of the Revenue Act of 1932 (26 U.S.C.A. § 272(b, c) and note) are not contradictory to title 26 U.S.C.A. § 1545, but, on the contrary, must be considered as referring back to that section as to the method of making valid service of notice and demand. For example, authority to make the service by mail is con-

tained only in the earlier section (26 U. S.C.A. § 272(a) and note.) "Notice and demand from the collector," as used in the later statutes, must mean notice and demand served as provided in the earlier statute, which Congress has not seen fit to modify as far as method of making valid service is concerned. The earlier section is superseded only with respect to cases in which service of notice and demand is no longer required, not as to the manner of making valid service where such service is required.

The question remains whether the language requiring service by the collector of notice and demand within ten days after receipt by him of the assessment list is a condition of valid service, or merely a direction, disregard of which does not render the service ineffectual.

■ Taxes may be collected in certain cases, by suit, without assessment. In such cases, the requirement of notice and demand is, of course, inapplicable, for the provision as to notice and demand relates only to assessed liabilities. But in such cases the burden is on the government to establish by proof of facts that the taxes sued for are liabilities of the persons sued. Little Miami & Columbus & Xenia R. Co. v. United States (1883) 108 U.S. 277, 2 S.Ct. 627, 27 L.Ed. 724. Where assessments are made, or required to be made, there are two methods of compelling payment, one by suit, a judicial proceeding; the other, by distraint, an executive proceeding. In either case, compliance with statutory conditions precedent, including initiation of proceedings within the time specified, is necessary. Bowers v. New York & Albany Lighterage Company (1927) 273 U.S. 346, 47 S.Ct. 389, 71 L. Ed. 676.

In all cases of income tax deficiencies, assessment by the Commissioner and service of notice and demand by the collector are specially required. Section 272(b) and (c), Revenue Act of 1932 (26 U.S.C.A. § 272(b, c) and note. The service of notice of the assessment and demand for payment complete the initiation of collection proceedings, by official communication to the taxpayer. Due notice and demand are prerequisite to further proceedings to collect, either by distraint or by suit, although the time within which either suit or distraint may be begun runs six years from the date of assessment. It is not reasonable to believe that Congress intended that the required notice of the assessment might be given to the taxpayer six years after the assessment. It was intended, rather, that the notice should be given in due course, within the time already fixed by statute; that is, within ten days after receipt of the assessment list by the collector.

■ The conclusion is unavoidable that service of notice and demand by the collector within ten days after receipt by him of the assessment list is a necessary condition to the validity of further proceedings to collect. There is nothing in the record to show, however, that the plaintiffs were in any way injured by the delay of two months in the making of the service. The question must be considered, therefore, whether the invalidity can be asserted only by those who have suffered some special loss or hardship by reason of the collector's noncompliance with the statutory requirement.

■■ Such defense is not available. The collection of the tax money without compliance is sufficient in itself to give rise to a cause of action for its recovery. Bowers v. New York & Albany Lighterage Company, supra. If the plaintiffs had refused to pay, and the collector had distrained and sold property of the estate, he could not have delivered a good title to the purchaser. United States v. Allen (C. C.Tenn.) 14 F. 263. The condition was prescribed for the protection of the citizen, and must be followed or the acts done will be invalid. Lyon v. Alley, 130 U.S. 177, 9 S.Ct. 480, 32 L.Ed. 899. The situation of one who pays to avoid distraint and sale cannot be worse than one who waits and invokes the invalidity after distraint and sale. The element of estoppel by voluntary payment is eliminated by the fact that the former condition precedent to suit to recover taxes illegally collected, of payment under protest or duress, has been abolished. Section 3226, Rev.St. as amended (26 U.S.C.A. §§ 1672–1673). Every tax collection is now necessarily considered to be involuntary. The equal application of the condition precedent of due notice and demand is essential to preserve the distinction between taxation, which is a taking by the government according to a general rule, and confiscation.

The plaintiffs are therefore entitled to judgment as prayed for in the complaint. The decision on the first issue is in their

favor, but on the second issue it would be against them except that the amount involved therein is included also in the third issue, which refers to the entire deficiency sought to be recovered.

As the parties have stipulated, in case judgment is entered in favor of the plaintiffs, they will attempt to agree upon the amount of the judgment, it follows that the attorneys for the respective parties ascertain the amount in dollars for which judgment should be entered, and, failing in that endeavor, they may submit their respective computations to the court for final determination. In the event of agreement, let a judgment be submitted accordingly, properly consented to as to form. The findings of fact and conclusions of law are sufficiently stated in the opinion.