## COMMISSIONER OF INTERNAL REVENUE v. LIBBEY.
### No. 3338.

Circuit Court of Appeals, First Circuit.
Dec. 28, 1938.

McLELLAN, District Judge, dissenting.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Norman D. Keller and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

John J. Mahon, of Lewiston, Me. (Skelton & Mahon, of Lewiston, Me., on the brief), for Alla A. Libbey.

Before BINGHAM and WILSON, Circuit Judges, and McLELLAN, District Judge.

BINGHAM, Circuit Judge.

This is a petition to review a decision or order of the Board of Tax Appeals of November 9, 1937, in which it was ordered that the respondent had overpaid her income tax for the year 1932 by $351.47 for which she had duly claimed a refund.

The facts out of which the controversy arises are in substance as follows: Winfield S. Libbey, of Lewiston, Maine, died in 1914, leaving a will, which made certain bequests that were to be paid as annuities to his wife, and bequeathed and devised the remainder of his estate to trustees. After providing for the payment of the annuities, the trustees were directed to divide the estate into four equal parts, each of which were to be held by them, managed, invested and reinvested for the benefit of certain designated beneficiaries, one of whom was the respondent, Alla A. Libbey. The provisions of the will pertinent to this proceeding are as follows:

"As to the trust estates so apportioned and held in trust for the benefit of my son, Harold S. Libbey, and my daughter, Alla A. Libbey, said trustees shall receive the income thereof accruing from time to time, and shall pay over the net income thereof

at least semi-annually to said beneficiaries for a period of three years after the close of administration of my estate by the executors and the executrix of this will, and at the expiration of said three years shall pay, transfer and deliver to my said son and daughter one fourth part of the trust estates in their hands held for the benefit of said beneficiaries respectively, and shall from time to time thereafter pay the net income of said trust estates as before to my said son and daughter for a further period of three years, and at the expiration of said second period of three years shall pay, transfer and deliver to each of them one third part of the respective trust estates then held for their benefit, and thereafter shall pay the net income of said trust estates as before to my said son and daughter for a further period of three years, and at the expiration of said third period of three years shall pay, transfer and deliver to my said son and daughter one half part of the respective trust estates then held for their benefit, and shall thereafter pay the net income of said trust estates as before to my said son and daughter, for a further period of ten years, and at the expiration of said period of ten years said trusts shall terminate, and upon such termination the funds then in the hands of said trustees shall be paid to my son and daughter respectively."

It further appears that the executors, having closed the administration of the estate in 1915, transferred to the trustees under the will the residue of the estate, including therein shares of the common stock of the Androscoggin Electric Company; that in 1920 the trustees sold or exchanged the shares of the common stock for an equal number of shares of six per cent preferred series A stock of the Androscoggin Corporation, both stocks having a par value of $100 a share; that the Androscoggin Corporation was formed in 1920 by the Central Maine Power Company, which owned all the common stock of the Androscoggin Corporation; that, thereafter, on April 12, 1921, the trustees distributed to the respondent a given number of the shares of the preferred stock of the Androscoggin Corporation; that the distribution made by them was of a portion of the one-third part of the trust estates directed, in the above quoted clause of the will, to be distributed to the respondent "at the expiration of the second period of three years;" that on January 1, 1932, the respondent sold or retired 121 shares of the preferred stock of the

Androscoggin Corporation out of those distributed to her on April 12, 1921, and received therefor $12,100, which sum she reported in her income tax return for 1932; that at the time the estate was closed in the spring of 1915 the fair market value of the common stock of the Androscoggin Electric Company was ten dollars a share; and that the fair market value of the 121 shares of the preferred stock of the Androscoggin Corporation on April 12, 1921, when they were distributed to the respondent, was ninety dollars a share.

The statute involved is Section 113 (a) (5) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. § 113, which provides:

"§ 113. Adjusted basis for determining gain or loss.

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that— * * *

"(5) Property transmitted at death. If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

Counsel for the Commissioner states that the sole question is, whether the basis of computing the gain from the sale and retirement of the 121 shares of the preferred stock of the Androscoggin Corporation on January 1, 1932, "was their fair market value on April 12, 1921," the date of their distribution to the respondent, or their "fair market value in 1915, when such shares were distributed by the estate of the respondent's father to the trustees of the testamentary trust." This question assumes that the shares of common stock of the Androscoggin Electric Company, transferred by the executors to the trustees in 1915, are the same shares as the shares of the preferred stock of the Androscoggin Corporation distributed by the trustees to the respondent in 1921. But this is not so. The facts in the case disclose that the 121 shares of the Androscoggin preferred stock

did not exist in 1915, for that corporation was not organized until 1920, and, such being the case, could not have been transferred by the executors to the trustees.

Just why the case is here for review we fail to understand, for the facts show that the 121 shares of the preferred stock of the Androscoggin Corporation were not acquired by the trustees until 1920 and could not have been distributed by the executors to the trustees in 1915. The preferred stocks not being in existence in 1915 could then have had no fair market value.

This seems to be an adequate answer to the petitioner's contention that the cost basis for ascertaining the value of the 121 shares of the preferred stock, sold and retired on January 1, 1932, was their fair market value in 1915.

It can serve no useful purpose to assume that the 121 shares of preferred stock sold and retired on January 1, 1932, were a part of the stock distributed by the executors to the trustees in 1915, for such is not the fact; and Section 113 (a) (5) of the Revenue Act of 1932, 26 U.S.C.A. § 113, was superseded in the Revenue Act of 1934 by Section 113 (a) (5), 26 U.S.C.A. § 113 (a) (5), which, in substance, re-enacted the provisions of Section 204 (a) (5) of the Revenue Act of 1926, 44 Stat. 14.

Furthermore, in United States v. Van Nostrand, 1 Cir., 94 F.2d 510, decided by this court January 26, 1938, we had before us the question of the construction and application of Section 113 (a) (5) of the Revenue Act of 1928, 26 U.S.C.A. § 113, which is the same as Section 113 (a) (5) of the Revenue Act of 1932. That was a case where the executor bequeathed and devised the residue and remainder of his estate to certain trustees in trust. It there appeared that the executors named in the will closed the estate December 31, 1925; that thereupon the residue of the estate was transferred to the trustees under the provisions of the will; that the testator's wife and life tenant under the will died April 8, 1927; that on July 27, 1927, the trustees delivered the principal of the trust to the plaintiff, the beneficiary; that during the year 1929 the plaintiff sold certain of the securities received by him from the trustees; that the Commissioner, in his determination of the plaintiff's tax liability on December 31, 1929, took as the basis for determining the taxable gain on the securities sold, their market value on April 8, 1927, the date of the death of the testa-

tor's wife, the life tenant under the will. In that case, in construing the third clause— "In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer"—of Section 113 (a) (5) of the Revenue Act of 1928, we held that that provision of the statute, as applied to the facts in that case, required the Commissioner to take as the cost basis for ascertaining the gain, the value of the stock on the 27th of July, 1927, the date of the delivery of the same by the trustees to the plaintiff, affirming the decision of the District Court, which reversed the ruling of the Commissioner. In overruling the contention of the Commissioner, we said [page 512]:

"We must assume that Congress had a reasonable understanding of the meaning of the terms it employed to express its intention and that it knew the phrase, 'at the time of the distribution to the taxpayer,' did not mean 'at the time an unconditional right to distribution accrued to the taxpayer.' * * * That * * * Congress, in its wisdom, in the last clause of section 113 (a) (5), fixed as the cost basis for securities sold by the taxpayer the market value of them 'at the time of the distribution to the taxpayer'—in other words the time of delivery of the securities to him."

The taxpayer in that case, as here, was the beneficiary under the trust, and the cost basis there, as here, was the value of the securities at the time the trustees made distribution of the securities to the taxpayer.

In Haskell v. Commissioner, 3 Cir., 78 F.2d 869, a case where the third clause of Section 113 (a) (5) and not the first clause was held applicable, the Commissioner, the Board and the Circuit Court of Appeals also held that the words of the third clause of the section—distribution to the taxpayer—meant what they say, distribution to the taxpayer and not to someone else, and so applied the statute. Certiorari was denied by the Supreme Court, 296 U.S. 652, 56 S.Ct. 368, 80 L.Ed. 464.

Counsel for the Commissioner, in their endeavor to interpret the above provision of the statute, have presented various arguments which might properly have been addressed to the Congress at the time it had the enactment of the law under consideration, but are of little or no value in ascertaining the intention of Congress as ex-

pressed in the statute. The meaning of the third clause of the statute is so plain that it does not call for construction, at least in its application to the facts of this case. "Distribution to the taxpayer" means what it says—delivery to the taxpayer. It does not mean delivery by the executors to the trustees, where the trustees are not the taxpayer. They are not the taxpayer here. And in this case it must be remembered that the preferred stock sold by the respondent (the taxpayer) were not delivered by the executors to the trustees in 1915, or at any other time. When the common shares of the Electric Company were transferred to the trustees in 1915, they did not hold them as agents of the taxpayer, but by virtue of the provisions of the will which required them to hold, manage, invest, and re-invest the corpus of the trust until certain fixed times before distribution to the beneficiary, the taxpayer. The beneficiary had no control of or right to the possession of any part of the trust property here in question including the preferred shares, until the expiration of the second period of three years as fixed by the will, at which time the preferred shares were delivered to the taxpayer.

Section 202 (b) of the Revenue Act of 1918, 40 Stat. 1060, provides:

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged."

That section is without application to this case.

First, because it does not appear that the sale or exchange of the common stock of the Electric Company was had "in connection with a reorganization" of that company or a "merger, or consolidation" of it with some other company. None of these facts are found and we are not permitted to speculate as to them, but are required to take the facts as found by the Board of Tax Appeals, unless they are not support-ed by the evidence and the evidence in this case is not reported.

And second, if the Board had found that the exchange in 1920 was "in connection with a reorganization, merger, or consolidation," which they did not, and the preferred shares were then "treated as taking the place" of the common shares, it would not follow that the fair value of the preferred shares in 1915 was $10.00 a share (as the petitioner would have us understand), for those shares were not then in existence.

The order or decision of the Board of Tax Appeals is affirmed.

McLELLAN, District Judge (dissenting).

In 1932, the taxpayer owned 121 shares of Androscoggin Corporation 6% Cumulative Preferred A stock, for which she received in that year $12,100. The question is the amount of taxable gain which then occurred. This involves a consideration of the cost basis of the stock. The Board of Tax Appeals took as such basis the market value in 1921, when the stock was turned over to the taxpayer by testamentary trustees who theretofore had held it for her benefit. The Commissioner of Internal Revenue contended and now urges that the cost basis is the market value in 1915 of stock of another corporation, the Androscoggin Electric Company, which in that year was received by trustees for the taxpayer's benefit.

The facts need not be repeated in detail. In 1914, Winfield S. Libbey died testate. Under the residuary clause of his will, certain property was left to trustees who out of a portion of it were to set up a trust for the benefit of his son and his daughter. The son and daughter were to receive the income from the trust and then after some years it was to be transferred to them discharged of all trusts. The executors distributed the residuary estate to the trustees in 1915. The trust set up for the testator's son and daughter included stock in the Androscoggin Electric Company, at least 121 shares of which were held for the benefit of the testator's daughter, the taxpayer in this proceeding. The situation in 1915, then, was that all legacies had been paid and the estate closed.

In 1920, the trustees exchanged the Androscoggin Electric Company stock for an equal number of shares in the Androscoggin Corporation. In 1921, the trustees deliver-

ed 121 shares of Androscoggin Corporation stock to the taxpayer and as to those shares the trust ended.

The Board of Tax Appeals decided that the value of this stock in 1921 is the correct cost basis. The majority affirms the Board's decision on two grounds, one of which was not considered by the Board and is mentioned in neither brief. The ground not so considered is that the stock which the taxpayer disposed of in 1932 is not the same stock which was received by the trustees from the executors in 1915. I think with respect that this is irrelevant.

After quoting Section 202 (b) of the Revenue Act of 1918, 40 Stat. 1060, which provides that when in connection with a reorganization a person receives in place of stock owned by him new stock of no greater par value, no gain or loss shall be deemed to occur from the exchange and the new stock received shall be treated as taking the place of the stock exchanged, the majority says this section is without applicability to this case. The opinion goes on to say that it "does not appear that the sale or exchange of the common stock of the Electric Company was had 'in connection with a reorganization' of that company or a 'merger, or consolidation' of it with some other company." The facts found by the Board tend to show a statutory reorganization, for their opinion states:

"At the close of the administration of the estate the trustees under the will received from the executors thereof shares of the common stock of the Androscoggin Electric Company with a par value of $100 a share. In 1920 the trustees exchanged such shares of common stock of Androscoggin Electric Company for an equal number of shares of the 6 percent preferred series A stock of the Androscoggin Corporation with a par value of $100 a share. The Androscoggin Corporation was formed by the Central Maine Power Company in 1920. The Central Maine Power Company owned all the common stock of the Androscoggin Corporation. The preferred stock of the Androscoggin Corporation was issued share for share to holders of all the common stock of the Androscoggin Electric Company.

"On April 12, 1921, the trustees distributed to the petitioner shares of the cumulative 6 percent series A stock of Androscoggin Corporation. This distribution was made by them as a portion of the one-third part directed by the will of Winfield S. Libbey to be distributed to the petitioner 'at the expiration of said second period of three years', as set forth in the above excerpt.

"The said 121 shares disposed of by the petitioner on January 1, 1932, were a portion of the distribution made on April 12, 1921."

But it is unnecessary to determine whether all the elements of a statutory tax-free reorganization are here presented. The record shows nothing to the contrary. It is one thing to support a decision upon findings supported by evidence, though different from the grounds on which the decision was based. It is quite another thing to supply facts not in the record and then to decide the case upon such facts. The pleadings and the Board's findings show that everyone treated the old stock as the same as the new, and the record contains no basis for a contrary finding.

As a second reason for the inapplicability of that section of the Revenue Act in 1918 quoted in the majority opinion, the court says in substance that if there were no statutory reorganization and the "preferred shares were then 'treated as taking the place' of the common shares, it would not follow that the value of the preferred shares in 1915 was $10 a share (as the petitioner would have us understand), for those shares were not then in existence." True, they were not then in existence. True, they had no pre-natal value. But the question is not the value of the new stock. It is the cost basis that counts. Clearly, in the hands of the trustees the cost basis of the new stock is the cost basis of the old stock, which is its value in 1915 when distributed to the trustees.

The crucial question is whether the cost basis to the trustees and to the beneficiary of the trust is the same. This depends upon when the "distribution to the taxpayer" occurred. Was it when the property was distributed to trustees for the taxpayer's benefit, or was it when the trustees turned it over to the taxpayer as beneficiary of the trust? Of course the relation of trustee and beneficiary differs radically from that of agent and principal. There is no quarrel with the Board's view that a trustee as such is not the cestui's agent. But, as of a date as early as the delivery of the trust res to the trustees, they had the legal title and the taxpayer the full beneficial interest or equitable title to it. While the question is debatable, I

think there was a distribution of the stock to the taxpayer within the meaning of the statute when the stock was delivered by the executors to the trustees for the taxpayer's benefit. I cannot think that the Congress, in providing as the cost basis of property later sold "the fair market value of the property at the time of the distribution to the taxpayer," intended to go beyond the time when the executor paid the legacies and closed the estate. Such a construction would permit increments to the value of property held in trust for many years to escape taxation in case of a subsequent sale by a former beneficiary after a termination of the trust. Cases involving the vesting of contingent remainders are beside the point and United States v. Van Nostrand, 1 Cir., 94 F.2d 510, on which the majority opinion rests in part, and in which the contention here made was not presented, requires no other conclusion. As applied to the facts here appearing, the distribution to which the statute refers is distribution by the executors to trustees for the taxpayer's benefit, and not a distribution by trustees years after the property had passed out of the testator's estate. To this effect is Judge Thomas' opinion in Jenkins v. Smith, Collector, D.C., 21 F.Supp. 433.

I think, with deference, that the decision of the Board of Tax Appeals should be reversed.